(Clark County, Ohio, Probate Court.)

J. W. KEIFER, Assignee, v. GEORGE SPENCE, et al.

---

An assignee having commenced an action in the probate court to sell the real estate assigned, the court has power upon the cross-petition of a defendant mortgagee, to grant such defendant affirmative relief and order the assignee to sell the property in the mortgage described and apply the proceeds therein.

Foreclosure is nothing more or less than the extinction of the mortgagor's equity of redemption by the sale of the premium, and the application of the proceeds to the payment of the mortgagee's caims. This section 6350 and 6351, both provide, may be done in the probate court in assignment matters.

---

ROCKEL, J.

In June, 1888. George Spence made an assignment of all his property to J. Warren Keifer in trust for the benefit of his creditors. The estate was quite a large one, consisting of lots and lands in the city of Springfield, in various counties in the state of Ohio and in other states of the Union. A number of persons held mortgages and other liens upon various different tracts, some being first mortgage lien and others second mortgage liens and judgments. In July, 1888, the assignee commenced a civil action in this court, and filed his petition herein, making the wife of the assignor and all the lienholders parties defendant. In September, 1888, E. Jane Spence, the wife, filed her answer and consented to the sale of said premises free of her dower interest therein, and that the value of her dower be allowed to her out of the sales. On the same day that Mrs. Spence filed her answer the assignee took an order to sell, either at public or private sale all such real estate, free of Mrs. Spence's dower, on the terms of one-third cash, one-third in one year and one-third in two years from date of sale, etc.. all questions arising out of liens in said real estate were reserved for the future consideration of the court. None of the lien holders at that time filed any pleadings to assert their lien on any specific part of the assigned property. The assignee, some at private, some at public sale, sold a large amount of the property, and distributed the same under the orders of this court to the various parties entitled. But a considerable portion remains yet undisposed.

On November 14, 1891. Mary Keifer filed a cross-petition, in which she alleged that she had been made a party defendant and that the assignor and his wife were indebted to her in the sum of $———secured upon a certain described real estate by mortgage, and that the conditons of the mortgage had been

broken, and that the same had become absolute.

This cross-petition further alleged that since said assignment, the property in her mortgage described had been twice appraised and four times offered at public auction, by the assignee, and that the assignee has also endeavored to sell the same at private sale, but without success.

And that said appraisements were both largely in excess of the actual selling value of said real estate, and that the same cannot be sold in any reasonable time.

She therefore prayed that the said real estate "be immediately re-appraised under an order of this court; that said assignee may be ordered to proceed forthwith to advertise and sell the same, under said re-appraisment so to be made, according to law, and apply the proceeds of such sale to the payment of this cross-petitioner's said claim: and that she may have such other relief as the nature of the case may require.

The assignee entered his appearance in writing to this cross-petition. The same was set down for hearing; and on the day of such hearing, the cross-petitioner, Mary Keifer, by her attorney, Geo. Arthur, the wife, E. Jane Spence, by J. Mower, her attorney and the assignee in person were present. On the hearing nothing much was said in reference to the nature of the relief asked for in the cross-petition, although the cross-petition was read by Mr. Arthur. The matter was principally argued upon the advisability of a re-appraisment. The matter was taken under advisement by the court, and after some weeks had elapsed, Gen. Keifer was informed that on the 7th of March, the court would grant Mr. Arthur, the attorney of Mrs. Keifer, an order in the matter. The court also informd Mr. Arthur of this fact and requested him to prepare the entry. On March 1, Mr. Arthur appeared and presented the entry, of which he said he notified Gen. Keifer, having been at his office, and he not being in, Gen. Keifer, nor no one else making any objection, the entry was journalized and an order was granted. The entry referred to is as follows:

"This day came J. Warren Keifer, assignee of George Spence, in person, and said Mary E. Keifer, by George Arthur, her attorney, and the said E. Jane Spence by J. K. Mower, her attorney, and thereupon this cause came on to be heard upon the cross-petition of said Mary E. Keifer, herein and upon the exhibits and testimony, and the same was argued by counsel. On consideration whereof the court finds that all of the statements contained in said cross-petition are true; that there is still due and unpaid to said Mary E. Keifer on the note mentioned in said cross-petition with interest computed to date the sum of six thousand eight hundred and seventy-one dollars and sixty-three cents ($6871.63) that the mortgage made by said George Spence and E. Jane Spence on the real estate described in said cross-petition, is the first and only lien on said real estate, except the taxes, and that the said Mary E. Keifer is entitled to the relief prayed for in her said cross-petition. It is therefore ordered, adjudged and decreed by the court that said J. Warren Keifer as assignee of said George Spence proceed forthwith to cause the real estate described in said Mary E. Keifer's cross-petition herein to be re-appraised by * * * according to law, that he thereupon, without delay, cause said real estate to be advertised and sold according to law, and apply the proceeds of such sale to the payment of said Mary E. Keifer's said claim, and said assignee is ordered to make return of his proceedings as soon as said sale is made.

Motion is now made that this order be set aside for the reasons.

1st. That such order was irregularly made in the absence and without the knowledge or consent of plaintiff herein, or other party to this proceeding, save Mary E. Keifer.

2d. This court has no jurisdiction to make such an order and the same is void.

3rd. This court has no jurisdiction of the necessary parties to authorize it to make any finding, or order on said cross-petition of the kind prayed therein, or of any kind.

As to the first and third reasons assigned for setting aside this journal order it is sufficient to say; that the assignee who represents the assignor and his creditors, having entered his appearance to this cross-petition and appeared in court at the time of its hearing, and that E. Jane Spence, wife of said assignor, who with this cross-petitioner, represented all the parties in interest, having also appeared by her attorney, and from the further fact that all terms in interest were made parties defendant by the assignee in his petition herein, and all were properly brought into court, and the said E. Jane Spence, the only other person, outside of general creditors, having any claim or lien on the premises in the cross-petition described, having filed an answer herein, this court has certainly acquired jurisdiction of all necessary or even proper parties to make any order otherwise authorized by law to make in the premises. There is no want of jurisdiction over the persons of the parties in interest herein.

2. Whether the court has jurisdiction to make the order in question, has never been decided in an Ohio court to our knowledge. It is contended by the assignee, that the granting of the order is the exercise of a chancery power only authorized in courts of general equity

jurisdiction, and that this court is not one of general equity jurisdiction. And further that it is a special proceeding and authorizes an order of sale to be made only upon the application or petition of the assignee, and not upon any cross-petition. It is conceded that the constitution authorizes the legislature to grant power to the probate court, over the matter in issue. The question then is has the legislature conferred this power?

The object and purpose of all assignment laws, is the speedy conversion of all the assets of the assignor, into money, and an equitable distribution to all the creditors. It does not contemplate the taking away of any right of any cred·tor, except such as will result to the general good of all, and do him no harm. By virtue of this equitable doctrine, creditors are required to present their claims to the assignee and receive payment in the due administration of the estate. An examination of the assignment law from the time of its first enactment in 1859, (56 O. L., 23), to the present, with a single exception, shows a constant enlargement of the powers of the probate court, and a seemingly intention to confer ample jurisdiction to do everything necessary to render complete justice to all interested parties.

The single exception is the act of 1861, (58 O. L., 106) which permitted, but did not direct the assignee that where the real estate was encumbered by liens, to file his petition for the sale of the same, in the court of common pleas. But this act did not curtail the jurisdiction of the probate court, it only enlarged that of the common pleas.

"This provision was made," says Judge Okey in Lindemavn v. Ingham, 36 Ohio St., 12, "because of the complex questions which are some times presented in regard to liens on the real estate, embracing as they do, questions as to liens by mortgage and judgment liens by execution foreign and domestic, vendor's liens, mechanic's lien, liens of occupying claimants and others. But even questions of this character may be determined in the probate court."

The intent of the legislature to confer ample jurisdiction in assignment matters to the probate court, to work out the equities of all interested parties, is found also from the fact that where such power is decided to be wanting, it passes an act conferring the lacking power. Thus, when the supreme court in Dwyer v. Garlough, 31 Ohio St., 159. decided that the assignee could not extinguish, by sale, the contingent right of dower of the wife of the assignor, in the assigned property, the legislature passed an act (77 O. L., 189), granting such power. The case of Dwyer v. Garlough, also sustains the proposition, that where complete relief can not be granted in the probate court

to a mortgagee he may bring his action in the court of common pleas, notwithstanding the asssignment.

But it also recognizes the doctrine that if the probate court can give complete relief, to the mortgagee, and its action has been invoked, that it then has exclusive urisdiction.

The case of Gilliland v. Sellers, 2 Ohio St., 223, deciding that a decree of a probate court, involving exercise of the general jurisdiction of a court of equity, must be considered as coram non judice and void, is said by Judge Cox, in Sayler v. Simpson, 2 C. C. R., 75, to be virtually overruled by Lindemann v. Ingham, 36 Ohio St., 1, and in the same case in the supreme court, Judge Williams says he does not perceive wherein it is in conflict with Lindeman v. Ingham, therefore, it would have no bearing in the present case.

The case of Lindemann v. Ingham is an important, and well considered case, (Judge Willams in Sayler v. Simpson, 45 Ohio St., 151.) In that case Ingham .& Brother, having a chattel mortgage, on property which had been assigned to Lindemann, demanded possession of the property covered by this mortgage which was refused by the assignee, who proceeded under the assignment laws to sell them and convert them into money. Ingham & Bro. then commenced an action against Lindemann to recover damages for the alleged wrongful conversion of the property by said assignee in the common pleas court of Hamilton county. In an answer the assignee set up the fact of his appointment by the probate court which has exclusive jurisdiction in such cases, and denied that he was answerable to the plaintiffs in the cause. Ingham & Bro. demurred to this defense which was sustained by the common pleas court. The case was taken on error to the district court and reserved to the supreme court, where the decision of the common pleas was reversed, holding that the probate court had ample jurisdiction in the matter, and that it was the duty of the assignee to sell the property, notwithstanding any objections of the mortgagees, and rights of the mortgagees and the creditors must be worked out in the proceeding in the probate court. After referring to the various statutory enactments, the court says, "These provisions very clearly show that the legislature intended to vest in the probate court full and complete jurisdiction over the whole subject of assignment of this character."

Sayler v. Simpson, 5 Ohio St.,141 is the most recent decision of the supreme court upon the jurisdiction of the probate court in matters of assignment.

This was also a chattel mortgage case. Sayler the assignee proceeded in the execution of his trust and converted the assets into money. The holders of the chattel mortgages then filed their applica-

tions in the probate court for an order directing the assignee, out of the proceeds, to pay the amount due on their mortgages. Certain creditors raised the question that the probate court had no jurisdiction to hear the application. The probate court held that it had such jurisdiction. The matter was taken by appeal to the common pleas court, and there it was adjudged that the probate court had no jurisdiction and the order was void. The common pleas judge in rendering his opinion says, (16 Bull., 38) "Upon an examination of the authorities I am of the opinion that the probate court did not have jurisdiction to determine, either the amount of the claims or the validity of the mortgages given. There was clearly an issue made in equity as to the validity of the mortgages, whether they were part and parcel of the assignment transaction, and in fraud of the rights of the general creditors. The power to try that issue has not been given to the probate court." Thus we see, from this opinion that, it was a clear test of the equity powers of the probate court. From the common pleas court the case was taken to the circuit court, (2 C. C. R., 75) where the decision of the common pleas was reversed and the probate court sustained. In the decision there the court say, 'The statute provides (section 6351), that the court shall order the payment of all incumbrances and liens on all the property according to priority. Now the term priority has a very comprehensive meaning in this case. The court is to order payment of lien and incumbrances according to priority. That involves the consideration of quite a number of questions. In the first place, whether there is a lien is a question that the probate court is to decide. That might involve questions of law and questions of equity, and yet the probate court must decide that, and according to priority. If the debt is not a lien; if it is not an incumbrance; if it has no legal existence as either, then certainly there can be no priority, because it does not exist, and the court, in order to ascertain whether there is a priority, must determine whether there is an existing thing that can have a priority; and that involves, as I said before, both law and equity principles in its decision."

From this court the case was taken an error to the supreme court, (45 Ohio St., 141; 17 Bull., 379, full brief of counsel also here given). And the decision of the probate and circuit court were sustained. In the opinion there rendered Judge Williams says: "The several provisions of the statute relating to assignments by insolvent debtors, and proceedings thereunder, adequately endow probate courts with jurisdiction to order sale of the assigned property, and the payment of all incumbrances and liens thereon, by the assignee out of the proceeds according to their priority and they may, in the ex-

ercise of such jurisdiction, decide upon the validity of such liens, and determine to what extent, and in what order they are entitled to be so paid."

While the decision in this case related to a chattel mortgage, the court considered both sections 6150 & 6151, and its reasoning shows no distinction between the powers of the court in relation to a chattel and a real estate mortgage.

In reference to the decision of Dwyer v. Garlough it is said: "This principle" (that is, where courts have concurrent jurisdiction, the one first acquiring jurisdiction retains the matter to the exclusion of the other), was fully recognized in Dwyer v. Garlough, 31 Ohio St., 158, but was denied application in the case solely on the ground that under the statute then in force, no authority was given the probate court to cause the wife's dower interest in the land to be sold, but only the property assigned, which did not include her interest: while by the terms of the mortgage the mortgagee was entitled to have it as well as the husband's estate sold; and the remedy then afforded by the sale in the probate court was therefore inadequate. It is apparent that the amendment referred to was made to supply this defect, and to remove the objection to their exclusive jurisdiction in such cases. Whether the object is fully accomplished is not a question now before us; but certainly the amendment is indicative of a legislative intent to repose in probate courts ample power to effectuate a speedy and complete administration of such trusts."

At the time this decision was rendered the statute did not provide specially that the assignee might commence a civil action in the probate court, to have all liens, etc., determined. Such right was then confined to the common pleas court exclusively. Since then as a further mark of the legislative intent in such matters, this right has been conferred upon the probate court by the act of May 18, 1886. 83 O. L., 236.

It is now provided, "that the assignee may, in all cases, where the real estate to be sold, or which has been contracted to be sold by the assignor prior to the assignment, is incumbered with liens, or where any questions in regard to title, or dower estate of the wife or widow of assignor, require a decree to settle the same, commence a civil action therefor in the common pleas court or probate court of the proper county, making all persons in interest, including the wife or widow of the assignor parties to such proceeding, and upon hearing, the court shall order a sale of the premises, or the completion of the contracts of sale so made by the assignor, the payment of the incumbrances, and the contingent dower interest of the wife or widow subject to the proviso hereinafter contained and determine the question in regard to the

title of the same; and the proceeds of the real estate so sold, the payment of the liens and incumbrances, and the contingent dower interest of the wife or widow as ordered by the court, shall be reported to the probate court by the assignee and disposed of as provided in this chapter". The language of this and the preceding sections, show conclusively to my mind that it was the intent of the legislature to confer full, ample and complete jurisdiction upon the probate court to determine. all questions, either equitable or legal, that are necessary to do equity and justice to all parties in interest and secure the proper and just administration of the trust. In fact, in all matters connected with the administration of such a trust, equitable rather than legal principles are applied.

But the language of this section strongly suggests that the action in this court in this cause is an equitable, rather than a legal action. "Commence a civil action". Now the term civil action in this as well as all code states embraces actions of both a legal and an equitable nature and as probate courts are so constituted not to give relief on legal actions, it must mean as here used an equitable action. In the original act giving this jurisdiction to common pleas courts the language used was "filing his petition", instead of to "commence a civil action." He must make "all persons in interest, parties to the proceeding" The object and purpose of this provision is not alone that the assignee may give the purchaser a title clear of these liens, for this is provided for in section 6350, where it is said "deeds shall be made of the real estate to the purchasers, conveying the tilte free from all liens on the same, for all debts. due by the assignor".

But, it is rather for the purpose of compelling "all parties in interest" to set up their claims, either by cross-petition or otherwise. and have them adjudicated for the protection of the assignee. The assignee having thus invoked the jurisdiction of the court and brought the mortgagee or other interested party within that jurisdiction it would be the duty of such mortgagee to file a pleading setting forth his cause of action, and equally well the duty of the court to grant him the relief to which such cause of action showed him entitled. With every mortgage there exists an inherent right of foreclosure. Foreclosure is nothing more nor less than the extinction of the mortgagor's equity of exemption by the sale of the premises, and the application of the proceeds to the payment of the mortgage claim. This, sections 6350 & 6851, both provide may be done in the probate court in assignment matters.

It is what the mortgagor agreed and contemplated, should be done when he made his deed of assignment. Without such power the assignment would prove ineffectual. A reservation of it would be a fraud.

I am of the opinion that this may be done on the cross-petition of a defendant.

For by the assignment and the bringing of the action, by the assignee in this court the mortgagee is deprived of that right in any other proceeding or court.

But the order granted in the case at bar rests not alone upon the facts set up in the cross-petition arising out of the mortgage of the defendant but upon the failure of the assignee to "at once convert all the assets by him received into money" as directed by law, and to sell the real estate therein discribed although twice appraised and four times offered.

The cross-petition seems to recognize that a former order of sale had been granted, and seeks to modify it with a reappraisement, and the enforcement of a prompt execution of sale immediately thereafter.

The cross-petition does not ask for an appraisement, but a reappraisement; and sufficient reasons are alleged to grant the same.

A finding of the amount due on the mortgage is asked in the cross-petition and made in the order. This is proper. Section 6351 seems to contemplate that such order may be made before the sale of the premises, as well as after such sale. Such is the practice in this court. Indeed, the assignee seemed to recognize it in this case when he made provision in his entry of sale on his petition that: "All questions arising in this case, and especially questions growing out of liens, priority of liens, and on distribution are reserved for the further and final order of the Court" The original order of sale in this case was not based upon anything more than the application of the assignee to sell and the finding that all the defendants had entered their appearance in writing, and that Mrs. Spence had, by answer waived her contingent right of dower in the real estate etc. The right of no one was adjudicated or passed upon, excepting Mrs. Spence's; and the order of sale with this exception conferred no greater authority of sale upon the assignee than he had already possessed.

The only effect it would have had, was that if the order had been executed and the real estate sold, the claims of the lien-holders would be transferred from the real estate to the fund arising from the sale, and they would be estopped from asserting any lien as against the premises. The claim of the lienholder on the property is not entirely extinguished until the premises are sold and confirmed by the court in any proceeding by the assignee.

Until the claim of the lienholder has been the subject of a proper hearing in a court of competent jurisdiction, or the assignee has converted the property upon which the lien exist into money, I am of

the opinion the claimant may come into this court either by an original application or by way of cross-petition, where he has already been made a party, set up his cause of action, and this court should give him the relief to which he is entitled. If he shows, as the cross-petition in this case does, that for almost four years the assignee has failed to sell the property and apply it on the mortgage, he has a right that this court direct the assignee to proceed in the execution of his trust, and sell said property and apply the proceeds on his mortgage.

This order in such a case rests not alone on the mortgage claim, but upon the failure of the assignee to execute his trust. Section 524 Revised Stat. gives this court exclusive jurisdiction "to control the conduct of the assignee" and if the court in this case, upon the cross-petitioner's application, would order the assignee to proceed in the execution of his trust, the order would be substantially the same as that made in the entry and order to which objection is made by the motion now under consideration. What the court can do indirectly it can do directly.

The cross-petitioner, as creditor of the assignor, is entitled to have the assignee proceed to sell the premises in the execution of his trust; as mortgage lienholder she is entitled to have this specific tract sold and the proceeds applied on her mortgage debt. If there was any previous order made in the court in the assignment that conflicts with this order or entry, so far as the same is in conflict therewith, it is set aside without any special order to that effect.

As an assignee is, by law, enjoined to at once convert all the property assigned into assets, and that he can sell the real estate without any order of court directing him so to do, if the assignee should make a sale of the premises under any order of this court and the sale be confirmed by the court, there could be no question as to the validity of the title. The only deed that the assignee can make, the one which the law directs shall be ordered made when the sale is confirmed, is one "conveying the title free from all liens on the same for all debts due by the assignor." The wife having filed her answer waiving her claim of dower, I have no doubt that a sale made by the assignee under an order as directed by the entry in question, as good a title would be conveyed as the assignee in any case could make. As the entry provides for a cash sale, and it might be to the interest of the general creditors, and work no substantial harm to this cross-petitioner, the entry is so modified, that the terms of sale be ⅓ cash on day of sale, ⅓ in one year and ⅓ in two years, with interest on deferred payments to be secured by mortgage on the premises, otherwise the motion to set aside the entry will be overruled.

Keifer & Keifer for Assignee.
George Arthur for Mary E. Keifer.